IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **ALLSTATE INDEMNITY COMPANY,** § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | **CIVIL ACTION NO. 4:25cv3693** |
| § | |
| **FEDERAL INSURANCE COMPANY,** § | |
| § | |
| *Defendant.* § | |

## ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

TO THE HONORABLE COURT:

Plaintiff Allstate Indemnity Company ("Allstate") files this its Original Complaint for Declaratory Judgment, seeking a judicial declaration enforcing its contractual and equitable claims against Federal Insurance Company ("Federal") for reimbursement of the portion of Allstate's settlement payment that Federal was legally obligated to pay. In support of the relief requested, Allstate would respectfully show the Court the following:

### I.
### PARTIES

1. Plaintiff Allstate is an insurance company incorporated under the laws of the State of Illinois with its principal place of business in Illinois. As a result, Plaintiff is a citizen of the State of Illinois and no other state for jurisdictional purposes to determine diversity of citizenship pursuant to 28 U.S.C. §1332(c)(i).

2. Defendant Federal is an insurance company incorporated under the laws of the State of Indiana with its principal place of business in Pennsylvania. As a result,

Defendant is a citizen of the States of Indiana and Pennsylvania and no other state for jurisdictional purposes to determine diversity of citizenship pursuant to 28 U.S.C. §1332 (c)(1). Defendant may be served by service on its agent for service of process as reported to the Texas Department of Insurance: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-4284. Allstate requests service on Federal either through its registered agent for service of process or through its attorney of record, Robbie A. Moehlmann, Donato, Brown, Pool & Moehlmann, PLLC, 3200 Southwest Freeway, Suite 2300, Houston, Texas 77027 either as Federal's agent for service or, after the requisite showing, as a reasonably effective means of providing Federal with notice of this Original Complaint. FED. R. CIV. P. 4(e)(1); TEX. R. CIV. P. 106; *see Leach v. City Nat'l Bank of Laredo*, 733 S.W.2d 578, 580 (Tex. App.—San Antonio 1987, no writ); *see also Mt. Hawley Ins. Co. v. Doxa Enter.*, No. 2:19-cv-00345, 2020 WL 6811487, at *2 (S.D. Tex. Apr. 30, 2020) (citing *Leach* in permitting service on counsel in a federal case). Allstate will seek to serve Federal first through its attorney and will request other service if Mr. Moehlmann declines or is not authorized to accept service on its behalf.

## II.
### JURISDICTION AND VENUE

3. This Court has jurisdiction over this declaratory judgment action pursuant to 28 U.S.C. § 1332 in that the suit is a civil action between citizens of different states and the matter in controversy far exceeds $75,000, exclusive of interest and costs. As Allstate previously informed Federal, defense counsel for Allstate's and Federal's mutual insured, Kendall Jordan, urged Allstate and Federal to pay the $1.25 million demand for a

full release of a significant bodily injury claim against Mr. Jordan. After deducting the $250,000 primary bodily injury liability limit of the underlying auto policy, the balance payable by Allstate and Federal was $1 million. The Allstate personal umbrella policy had a $1 million limit, while the Federal personal excess liability policy had a $10 million limit. Therefore, Federal's indemnity obligation for the recommended settlement was $910,000.

4. Despite demands, Federal refused to pay its pro rata share, requiring Allstate to make that payment to protect the interests of the mutual insured. Allstate's demand for reimbursement of $910,000 and the available coverage limits of the two policies are properly considered in confirming that the "amount in controversy" requirement is satisfied. *See St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (amount in controversy determination includes policy limits and potential damages); *see also Allstate Fire and Cas. Ins. Co. v. Love*, 71 F.4th 348, 351-52 (5th Cir. 2023). Thus, the minimum jurisdictional limits exist in this case.

5. There is an actual controversy between Allstate and Federal for purposes of 28 U.S.C. § 2201 because of the ongoing reimbursement dispute and Allstate's pending demand that Federal pay its pro rata share of the $1 million settlement amount in excess of the underlying bodily injury liability limit of $250,000. Federal has refused to pay its pro rata share of $910,000 despite a demand letter to Federal by Allstate, through counsel, on June 18, 2024 and subsequent demand letters sent to Federal's counsel on July 1, 2024, August 30, 2024 and October 28, 2024. Federal failed to respond to much less pay these demands to date.

6. As the Fifth Circuit recently reiterated in *Golden Bear Insurance Co. v. 34th S&S, L.L.C.*: the Declaratory Judgment Act "permits those putative litigants who are threatened with sufficiently imminent liability to receive an 'early adjudication' of their legal rights" where the amount in dispute satisfies federal subject matter jurisdiction requirements. No. 24-20332, 2025 U.S. App. LEXIS 6058, at *5-*6 (5th Cir. Mar. 14, 2025) (citing *Rowan Cos. v. Griffin*, 876 F.2d at 26, 28 (5th Cir. 1989)). Furthermore, as the Fifth Circuit concluded in *EMCASCO Ins. Co. v. American International Specialty Lines Ins. Co.*, governing Texas law "recognizes the right of one insurer to seek payment from a second insurer under the doctrine of equitable subrogation." 438 F.3d 519, 524 and n.2 (5th Cir. 2006) (citation omitted).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Allstate and Federal excess policies providing liability coverage for Kendall Jordan were issued to their mutual named insureds in this District, and all of the events made the basis of this action occurred in this District. Furthermore, the underlying lawsuit that Allstate settled that is the basis for its reimbursement claims was filed against Allstate's and Federal's mutual insured and settled in this District.

### III.
### DECLARATORY JUDGMENT ACTION FOR REIMBURSEMENT

8. Allstate brings this declaratory judgment action under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 for the purpose of determining actual controversies between the parties, as described herein. Those controversies result from Allstate's settlement of the claims asserted against Kendall Jordan in the lawsuit

styled *Makenzy Cornell v. Kendall Jordan*, Cause No. 23-08-11258, assigned to the 284th Judicial District Court of Montgomery County, Texas (the "Underlying Lawsuit").  In the Underlying Lawsuit, Ms. Cornell sought monetary relief in excess of $1 million for her substantial bodily injury claims resulting from a collision with a vehicle driven by Kendall Jordan.  Consistent with the terms of its auto policy in effect on the accident date, Allstate Fire and Casualty Insurance Company ("AFCI") agreed to defend Kendall Jordan and to indemnify him up to the AFCI auto policy limit of $250,000.

9.   In the course of the Underlying Lawsuit, Ms. Cornell made a demand of $1.25 million to settle her claims against Kendall Jordan, despite noting that her experts had estimated damages that "far exceed" that demand.  Given the amount of the demand and available coverages under the AFCI auto policy, the Allstate personal umbrella policy and the Federal personal excess liability policy produced in disclosures during the Underlying Lawsuit, defense counsel obtained an extension of the response deadline for the demand until July 5, 2024 for the carriers to consider his recommendation to accept the demand.

10.   While acknowledging liability coverage for the claims against Kendall Jordan in the Underlying Lawsuit, Federal incorrectly informed defense counsel of its determination that the Federal policy "would be the third layer of coverage in this matter, with $10 million of excess liability."  However, for the reasons explained by letter dated June 18, 2024 to the assigned Federal adjuster in demanding that Federal pay its pro rata share of $910,000 to conclude the settlement, this conclusion is inaccurate under controlling Texas law.

5

# IV.
## CONFLICTING "OTHER INSURANCE" PROVISIONS

11. Both the Allstate personal umbrella policy and the Federal personal excess liability policy providing excess coverage for the claims in the Underlying Lawsuit were issued to Jason Jordan as a named insured in Missouri City, Texas. Thus, Article 21.42 of the Texas Insurance Code mandates application of Texas law to determine the scope of coverage because the policies were issued in Texas to a citizen and inhabitant of Texas. *See Millis Development & Construction, Inc. v. America First Lloyd's Ins. Co.*, 2011 WL 3567331, at *7 (S.D. Tex. Aug. 12, 2011). On this basis, the Court in *ATP Oil & Gas Corp. v. Water Quality Ins. Syndicate* concluded that: "When a Texas resident is an insured, § 21.42 of the Texas Insurance Code effectively trumps other applicable choices of law." 531 B.R. 694, 700 (Bankr. S.D. Tex. 2015).

12. The relevant coverage provisions under the Allstate personal umbrella policy are those pertaining to Section 1 coverage as the claims in the Underlying Lawsuit also were covered by Required Underlying Insurance under the AFCI auto policy. In the part of the Allstate personal umbrella policy entitled "Amounts We Pay – Section 1," this policy states that:

> We [Allstate] will pay only that amount of damages which exceeds the sum of:
>
> 1. the limits specified in this policy for the Required Underlying Insurance under which the occurrence is a covered loss [$250,000]; plus
>
> 2. the limits of any and all other liability insurance available to an insured person which apply to this occurrence.

This payment obligation is subject to the stated liability limit of $1 million.

13. Thus, by its terms, this Allstate policy provides excess coverage over and above not only the AFCI auto policy but also the liability insurance admittedly available to Kendall Jordan under the Federal personal excess liability policy. Similarly, the Federal personal excess liability policy requires payment for damages "in excess of all underlying insurance covering those damages," further stating that such insurance "includes all liability coverage that applies to the covered damages, except for other insurance purchased in excess of this policy." In other words, both excess policies by their terms provide coverage in excess of all other available coverages, both purporting to provide the third layer of coverage above the AFCI auto policy and the other excess policy.

14. Given the conflicting "excess" provisions in the Allstate and Federal policies both providing excess coverage for Kendall Jordan for the third layer of coverage, the carriers' respective indemnity obligations must be evaluated by the standard specified by the Texas Supreme Court in *Hardware Dealers Mutual Fire Ins. Co. v. Farmers Insurance Exchange*, 444 S.W.2d 583 (Tex. 1979). In that decision, the Court established a two-prong test to determine the extent of coverage provided by multiple policies that extend liability coverage to a common insured:

> When, from the point of view of the insured, she has coverage from either one of two policies but for the other, and each contains a provision which is reasonably subject to a construction that it conflicts with a provision in the other concurrent insurance, there is a conflict in the provisions.

444 S.W.2d at 589. If the answer to both prongs is "yes," then the policies conflict, and coverage by operation of law must be apportioned on a pro rata basis between the insurers. *Id.*

15. When viewed from the point of view of Kendall Jordan, there is coverage under the two excess policies but for the other policy. Also, both policies by their terms provide the third layer of coverage. Therefore, each policy contains a provision reasonably subject to a construction that conflicts with the provision in the other concurrent policy. Under these circumstances, the Allstate and Federal policies are in conflict. As a result, both policies by operation of law provide pro rata coverage for the reasons explained by the Court in *Safeco Lloyd's Ins. Co. v. Allstate Ins. Co.*, 308 S.W.3d 49 (Tex. App.—San Antonio 2009, no pet.).

16. In that case, the Court initially determined that both policies provided coverage for the driver but for the other policy, meeting the first prong of the *Hardware Dealers* test. Considering the "conflicts portion of the *Hardware Dealers* test," because "each policy contained a provision that is reasonably subject to a construction that it conflicts with a provision in the other concurrent policy," the two carriers "share liability on a pro rata basis in proportion to the amount of insurance provided by their respective policies." 308 S.W.3d at 59-60.

17. Indeed, the Court found pro rata coverage for a settlement and required the contesting carrier to pay its pro rata share of the settlement under precisely the same three-policy coverage scenario in *United States Auto. Assoc. v. Underwriters at Interest*, 2000 WL 332718, 2000 Tex. App. LEXIS 2080 (Tex. App.—Houston [14th Dist.] Mar.

8

30, 2000, pet. denied). As here, that decision involved a bodily injury claim resulting from an automobile accident where the father of the minor tortfeasor had: (1) a primary automobile policy from USAA; (2) a PUP policy also from USAA; and (3) a personal liability policy with Underwriters through his employer. Both excess carriers argued that coverage under its excess policy provided the third layer of coverage. The "other insurance" language in the USAA policy mirrors the Allstate policy language, while the Underwriters policy contains limiting language substantively the same as the Federal policy. Sl. Op. at *4-*5. In construing the language of the PUP and employer-provided excess liability policies, the Court required the carriers to pay the settlement on a pro rata basis.

      18.    As the Court explained, citing the *Hardware Dealers* decision:

> In sum, neither of the policies specifically lists the other as part of the required underlying or subordinate coverage, neither contains a pro rata clause or escape clause, and both have one or more excess clauses which are contrary to the excess clauses in the other policy. In such a situation, where an insured has coverage from either of the two policies but for the other, and each contains a provision which is reasonably construed to conflict with a provision of the other, the repugnancy is resolved by ignoring the conflicting provisions and pro rating the coverage in proportion to the policy limits of each policy.

Sl. Op. at *6. In a corresponding footnote, the Court further held that, although the two policies in *Hardware Dealers* provided primary coverage, "the same analysis applies to any overlapping policies which provide coverage at the same level, including true excess policies." Sl. Op. at *6 n.5 (citation omitted).

19. Similarly, the Court required two excess carriers to pay a settlement on a pro rata basis as a result of conflicting "other insurance" language in *Evanston Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 2012 WL 12977322, 2012 U.S. Dist. LEXIS 200620 (E.D. Tex. Mar. 19, 2012). In that case, the insured purchased its own primary and excess policies from National Union and also was an additional insured under a primary policy and an umbrella policy purchased by another party from Evanston.

20. The Court concluded that Evanston was entitled to recover the pro rata share of the settlement that National Union refused to pay because the two excess policies insured the same party, with the same interest and risk. Sl. Op. at *20. As the Court explained: "if the policies at issue contain conflicting 'other insurance' clauses, as when both contain either an escape clause or an excess clause, apportionment is required." Sl. Op. at *24 (citations omitted). When there are conflicting "other insurance" clauses, "contribution is available to an insurer that pays more than its proportionate share," a situation that exists where "each policy contains an excess clause." Sl. Op. at *24-*25.

21. Applying the two-prong *Hardware Dealers* analysis, the Court in *Evanston* first concluded that the insured had coverage under the two excess policies, but for the other, so that the first prong was "easily satisfied." Sl. Op. at *25. To assess the second prong, the Court quoted the Evanston policy language that the policy provides coverage that is "excess over any other insurance," irrespective of the stated nature of that coverage, except for "such insurance specifically purchased to apply in excess of this

10

policy's Limit of Insurance." This language is substantively the same as the Federal policy language.

22. Similarly, the National Union policy stated that coverage was "excess of" any "other valid or collectible insurance with any other insurer," substantively the same as the language in the Allstate policy. The Court resolved the dispute by ruling that:

> A reading of both policies reveals that each purports to be in excess of the other. Therefore, the Court concludes that these two provisions could reasonably be construed to conflict. …Accordingly, because the "other insurance" provisions contained in the subject policies conflict, they must be ignored for purposes of this action.

Sl. Op. at *26-*27 (internal citations omitted).

23. Due to the conflicting provisions, Evanston was entitled to contribution on a pro rata basis from National Union when it paid more than its fair share of the settlement. Sl. Op. at *27; *see also, e.g., Amerisure Mutual Ins. Co. v. Travelers Lloyds Ins. Co.*, 2010 WL 1068087, 2010 U.S. Dist. LEXIS 27066, at *20-*21 (S.D. Tex. Mar. 22, 2010) (ruling that two excess carriers were required to provide pro rata coverage due to the conflicting "other insurance" provisions).

24. Given the conflicting provisions in their policies, Allstate and Federal provide pro rata, not excess, coverage above the AFCI policy limit of $250,000. Therefore, consistent with the decisions discussed above, Federal had a contractual duty to pay $910,000 as its pro rata share of the $1 million settlement demand in excess of the underlying coverage afforded by the AFCI policy.

## V.
### FIRST CAUSE OF ACTION – DECLARATORY JUDGMENT – CONTRACTUAL SUBROGATION

25. "Contractual subrogation is created by policy language in which the insurer, in exchange for payment of the loss, receives the insured's rights against the third party who was primarily liable for the payment." *United States Fidelity & Guaranty Co. v. Coastal Refining & Marketing, Inc.*, 369 S.W.3d 559, 565 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The Allstate personal umbrella includes a provision entitled "Subrogation," which states in relevant part that:

> When we [Allstate] pay, an insured person's rights of recovery from anyone else become ours up to the amount we have paid. This includes any rights to claims against any other insurer which failed in its obligation to provide insurance applying to the occurrence. …

26. Consistent with its assigned contract right, Allstate is entitled to recover $910,000 of the $1 million payment it made in excess of the AFCI auto policy limit of $250,000 to settle the claims in the Underlying Lawsuit. Despite several demands, Federal has failed to comply with its contractual obligation to pay that amount.

## VI.
### SECOND CAUSE OF ACTION – DECLARATORY JUDGMENT – EQUITABLE SUBROGATION

27. "The doctrine of equitable subrogation allows a party who would otherwise lack standing to step into the shoes of and pursue the claims belonging to a party with standing" where that party involuntarily pays a debt primarily owed by another "in a situation that favors equitable relief." *Frymire Engineering Co. v. Jomar International, Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008). By virtue of its payment of $1 million in excess

of the AFCI auto limit to settle the claims against Kendall Jordan, Allstate involuntarily paid amounts for which Federal was primarily liable and that, in equity, should have been paid by Federal.

28. Based on its payment of $1 million, Allstate is equitably subrogated to Kendall Jordan. On that basis, Allstate is entitled to reimbursement from Federal for Federal's pro rata share of the settlement, mandating reimbursement of $910,000.

## VII.
### THIRD CAUSE OF ACTION – DECLARATORY JUDGMENT – EQUITABLE CONTRIBUTION

29. A right to equitable contribution exists where insurers have (1) a common obligation; and (2) the carrier seeking contribution "made a compulsory payment or other discharge for more than its fair share of the common obligation or burden." *Colony Ins. Co. v. First Mercury Ins. Co.,* 88 F. 4th 1100, 112 (5th Cir. 2023)(citation omitted). Federal has not paid its equitable share of the settlement payment to conclude the Underlying Action, thereby unjustly profiting at the expense of Allstate.

30. Allstate's right to equitable contribution is further supported by the decision in *Coastal Refining*. In that decision, the Houston Fourteen District Court of Appeals held as a matter of law that two excess carriers provided pro rata coverage because their "other insurance" clauses were mutually repugnant, as both policies incorporated excess coverage provisions. 369 S.W.3d at 566-67. Furthermore, the Court rejected the contention that pro rata coverage was not proper where one of the excess carriers argued that its "other insurance" provision was "more specific," to avoid the concern of the Texas Supreme Court in *Hardware Dealers* to assess coverage priorities in such a

manner that it "encourages the continuing battle of draftsmanship" that would result in "a mechanical application of some arbitrary test." 369 S.W.3d at 567 (quoting *Hardware Dealers*, 444 S.W.2d at 590). The same analysis mandates pro rata coverage, requiring Federal to reimburse Allstate for its pro rata share of the settlement, $910,000.

31. For these reasons, Allstate is entitled to equitable contribution from Federal to reimburse Allstate for the overpayment by Allstate of $910,000, the amount owed by Federal.

For these reasons, Plaintiff Allstate Indemnity Company respectfully requests that Defendant Federal Insurance Company be cited to appear and answer herein and that the Court thereafter enter a declaratory judgment reimbursing Plaintiff for Defendant's proper share of the settlement for one or more of the alternative reasons discussed above and for such other and further relief that the Court deems just and proper.

Respectfully submitted,

*/s/ Ronald J. Restrepo*
Ronald J. Restrepo
State Bar No. 16791300
Federal I.D. No. 920
rrestrepo@drhrlaw.com
**DOYLE, RESTREPO, HARVIN & ROBBINS, LLP**
440 Louisiana, Suite 2300
Houston, Texas 77002
(713) 228-5100 Telephone
(713) 228-6138 Facsimile

**ATTORNEY-IN-CHARGE FOR PLAINTIFF,
ALLSTATE INDEMNITY COMPANY**