IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **ALLSTATE INDEMNITY COMPANY,** § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:25cv3693 |
| § | |
| **FEDERAL INSURANCE COMPANY,** § | |
| § | |
| *Defendant.* § | |

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE COURT:

Plaintiff Allstate Indemnity Company ("Allstate") files this Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a), requesting that the Court require reimbursement by Federal Insurance Company ("Federal") of its pro rata share of Allstate's settlement payment for a full release of these carriers' mutual insured and in support of its reimbursement claim would respectfully show the Court as follows:

### I.
#### BACKGROUND

1.  The indemnity coverage dispute between Allstate and Federal results from Allstate's payment of the full settlement in excess of the underlying primary coverage limits to secure a release of Allstate's and Federal's mutual insured, Kendall Jordan, in the lawsuit styled *Makenzy Cornell v. Kendall Jordan*, Cause No. 23-08-11258, assigned to the 284th Judicial District Court of Montgomery County, Texas (the "Underlying Lawsuit"). In the Underlying Lawsuit, Ms. Cornell sought damages for her substantial

bodily injury claim against Mr. Jordan, who had primary coverage under an Allstate Fire and Casualty Insurance Company ("AFCI") auto policy, with a bodily injury liability limit of $250,000.

2. In the Underlying Lawsuit, Ms. Cornell's counsel made a demand of $1.25 million to settle her claims against Mr. Jordan, despite noting that her experts had estimated damages that "far exceed" that demand, with an extended response deadline of July 5, 2024.[1] Counsel for Allstate informed Federal of that demand by letter on June 18, 2024, reporting defense counsel's strong recommendation that the carriers pay the demand for a full release of the mutual insured.[2] The letter further reports that AFCI had agreed to pay its primary auto policy limit of $250,000 and that Allstate agreed with the recommendation to accept the demand.

3. For these reasons, the letter demands that Federal agree to pay $910,000 as its pro rata share of the $1 million settlement amount in excess of the AFCI auto policy limit, further explaining the legal basis for the pro rata indemnity obligations of Allstate and Federal for the excess $1 million. Having never received a response, Allstate reiterated its earlier demand and the impending deadline by letter on July 1, 2024 to Federal's coverage counsel.[3] Once again, there was no response prior to the deadline. As a result, to protect the mutual insured and avoid continued litigation, Allstate paid the $1 million settlement in excess of the AFCI limit. Allstate now seeks Federal's pro rata share of that payment.

---

[1] A true and correct copy of the demand letter is attached as Exhibit 1 to the Affidavit attached as Exhibit A.
[2] A true and correct copy of this letter is attached as Exhibit 2 to the Affidavit attached as Exhibit A.
[3] A true and correct copy of this letter is attached as Exhibit 3 to the Affidavit attached as Exhibit A.

## II.
## UNDISPUTED FACTS

4. In its Answer to Plaintiff's Original Complaint for Declaratory Judgment (the "Answer") [Dkt. 7], Federal admits that its excess policy provides liability coverage for the claims against Mr. Jordan in the Underlying Lawsuit. (Answer ¶ 10). Federal further admits that both the Allstate personal umbrella policy and the Federal personal excess liability policy provided excess coverage for the claims against Mr. Jordan and that Texas law governs this coverage dispute. (Answer ¶ 11).

5. Critically, in paragraphs 12 and 13 of its Answer, Federal further concedes that the coverage provisions in the two excess policies relevant for resolving this dispute are correctly stated in the Original Complaint [Dkt. 1]. The governing part of the Allstate personal umbrella policy, entitled "Amounts We Pay – Section 1," states that:

> We [Allstate] will pay only that amount of damages which exceeds the sum of:
>
> 1. the limits specified in this policy for the Required Underlying Insurance under which the occurrence is a covered loss [$250,000]; plus
>
> 2. the limits of any and all other liability insurance available to an insured person which apply to this occurrence.

This payment obligation is subject to the stated liability limit of $1 million.

13. Federal also admits that, by its terms, the Allstate personal umbrella policy provides excess coverage over and above not only the AFCI auto policy but also the liability coverage admittedly available to Mr. Jordan under the Federal personal excess liability policy. Federal further admits that the Federal personal excess liability policy

3

with a $10 million limit similarly requires payment for damages "in excess of all underlying insurance covering those damages," stating that such underlying insurance "includes all liability coverage that applies to the covered damages, except for other insurance purchased in excess of this policy." Thus, Federal concedes that both policies by their terms provide coverage in excess of all other available coverages up to the respective limits of $1 million under the Allstate policy and $10 million under the Federal policy.

### III.
### SUMMARY JUDGMENT STANDARD

14. As this Court has concluded, citing Fifth Circuit precedent:

> "Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" …"A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

*Progressive Commercial Cas. Ins. Co. v. Xpress Transport Logistics, LLC*, No. H-21-2683, 2022 U.S. Dist. LEXIS 4999, at *5 (S.D. Tex. Jan. 11, 2022) (citations omitted. The parties agree that Texas law applies to resolve the coverage dispute.

15. There is no genuine issue as to any fact in this case material to resolve the coverage dispute as a matter of law. The undisputed evidence shows that Allstate paid $1 million in excess of the AFCI limits for a full release of Mr. Jordan, who is a mutual insured of Allstate and Federal. There also is no dispute that the "other insurance" provisions in the Allstate and Federal policies both, by their terms, provide excess

4

coverage above all other available policy limits. As a result of the admittedly conflicting excess "other insurance" provisions in the two policies, the Allstate and Federal policies necessarily provide pro rata coverage in excess of the AFCI primary limit of $250,000, consistent with the Texas Supreme Court's ruling in *Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exchange*, 444 S.W.2d 583, 589 (Tex. 1979).

16. For these reasons, this Court held that two policies provided pro rata coverage due to similarly conflicting "other insurance" provisions in *Amerisure Mut. Ins. Co. v. Travelers Lloyds Ins. Co.*, No. H-09-662, 2010 U.S. Dist. LEXIS 27066 (S.D. Tex. Mar. 22, 2010). As here, the "other insurance" clauses in the two policies in that case both provided only excess coverage. Given the conflicting excess "other insurance" clauses, the Court concluded that "the repugnancy is resolved by ignoring the conflicting provisions and prorating the coverage in proportion to the policy limits of each policy." Sl. Op. at *21 (quoting *U.S. Auto. Association v. Underwriters at Interest*, No. 14-98-00234-CV, 2000 Tex. App. LEXIS 2080, at *6 (Tex. App.—Houston [14th Dist.] Mar. 30, 2000, no pet.)); *see also Safeco Lloyd's Ins. Co. v. Allstate Ins. Co.*, 308 S.W.3d 49, 59-60 (Tex. App.—San Antonio 2009, no pet.) (ruling that two carriers "share liability on a pro rata basis and proportion to the amount of insurance provided by their respective policies" where the policies incorporate conflicting "other insurance" provisions).

17. Indeed, the Court found pro rata coverage for a settlement and required the contesting carrier to pay its pro rata share of the settlement under precisely the same three-policy coverage scenario in the quoted *U.S. Auto.* decision. As here, that decision involved a bodily injury claim resulting from an automobile accident where the tortfeasor

had: (1) a USAA primary auto policy; (2) a USAA personal umbrella policy; and (3) an excess policy with Underwriters through his employer. The "other insurance" language in the USAA personal umbrella policy mirrors the Allstate policy language, while the Underwriters excess policy language is substantively the same as the Federal policy. Sl. Op. at *4-*5. Due to the conflicting excess provisions, the Court required the carriers to pay the settlement on a pro rata basis. Sl. Op. at *6-*7. That same analysis demonstrates that the Allstate and Federal policies provide pro rata indemnity coverage in excess of the AFCI $250,000 limits, requiring pro rated payments of $90,000 from Allstate and $910,000 from Federal for the $1 million settlement in excess of the AFCI limits.

## IV.
## SOLE DISPUTED LEGAL ISSUE

18.  The sole basis for Federal's disputing Allstate's reimbursement demand is what Federal describes as "controlling case law," the Texas Supreme Court's decision in *Mid-Continent Ins. Co. v. Liberty Mutual Ins. Co.*, 236 S.W.3d 765 (Tex. 2007). (Answer ¶¶ 6, 27-30). On this basis, Federal argues that Allstate may not recover Federal's pro rata share of the settlement based on the contention that Allstate "voluntarily paid the settlement amount" and thus is "barred by the voluntary payment doctrine" discussed in *Mid-Continent*. (Answer ¶ 34).

19.  However, Federal's excuse for failing to pay its pro rata share of the settlement is unavailing for precisely the reasons discussed by the Court in *Evanston Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 1:09-CV-909, 2012 U.S. Dist. LEXIS 200620 (E.D. Tex. Mar. 19, 2012). In determining the indemnity obligations of

two excess carriers, quoting precedent from this Court, the Court in *Evanston* concluded that:

> "The right of action is one of contribution, the elements of which require that the same insurers share a common obligation or a burden and that the insurer seeking contribution has made a compulsory payment or other discharge of more than its fair share of the common obligation or burden."

Sl. Op. at *20 (quoting *Union Indemnity Ins. Co. v. Certain Underwriters at Lloyd's*, 614 F.Supp. 1015, 1017 (S.D. Tex. 1985)).

20. Contrary to Federal's sole excuse for refusing to pay its pro rata share, the Court in *Evanston* concluded that the Texas Supreme Court's ruling in *Mid-Continent* was only that "a direct claim for contribution disappears when the insurance policies both contain 'pro rata' clauses" but did not override "the general rule that a right of contribution exists where co-insurers share a common obligation and one insurer makes a compulsory payment of more than its fair share of that common burden," as here. Sl. Op. at *23 (citing *Mid-Continent*, 236 S.W.3d at 772-73). In other words, the contribution claim fails only "if both policies contain pro rata clauses," eliminating the common liability requirement for a contribution claim. *Id*. (citations omitted).

21. Thus, there was no right of contribution in *Mid-Continent* because the carriers' pro rata "other insurance" clauses were not in conflict. *Mid-Continent*, 236 S.W.3d at 773. This ruling does not preclude Allstate's reimbursement claim in light of Federal's acknowledging "that Allstate and Federal have conflicting provisions in their policies." (Answer ¶ 24). Allstate is entitled to contribution based on precisely the same

7

distinction discussed by the Court in *Evanston*, requiring contribution where there are conflicting excess "other insurance" clauses, not the exception discussed in *Mid-Continent* precluding contribution where there were non-conflicting pro rata "other insurance" clauses. On this basis, after discussing a carrier's inability to seek contribution where the two policies provide pro rata, not excess, coverage, the Court in *Evanston* held that: "Conversely, if the policies at issue contain conflicting 'other insurance' clauses, as when they both contain either an escape clause or an excess clause, apportionment is required." Sl. Op. at *24 (citing *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 210 (5th Cir. 1996)).

22. In light of the conflicting excess "other insurance" provisions, the Court rejected Federal's excuse that the contribution claim is foreclosed by the *Mid-Continent* decision. Sl. Op. at *6. Rather, "when conflicting 'other insurance' clauses are involved, contribution is available to an insurer that pays more than its proportionate share." Sl. Op. at *24-*25 (citing *St. Paul Mercury Ins. Co.*, 78 F.3d at 210). The Court therefore held as a matter of law that the overpaying excess carrier was entitled to contribution "as each policy contains an excess clause." Sl. Op. at *25. In a footnote to that holding, the Court reiterated the distinguishing differences in the case presented (the same scenario as here) and those in *Mid-Continent*, so that "application of the general rule regarding contribution among co-insurer's is appropriate," rather than the exception in *Mid-Continent* where both carriers provided only non-conflicting pro rata coverage. Sl. Op. at *25 n.9. Thus, as in *Evanston*, Allstate is entitled to reimbursement of its overpayment. Sl. Op. at *27-*28 (citations omitted).

8

23. Allstate's right to contribution is further supported by the analysis and ruling in *United States Fidelity & Guaranty Co. v. Coastal Refining & Marketing, Inc.*, 369 S.W.3d 559 (Tex. App.—Houston [14th Dist.] 2012, no pet.). At the outset, the Court concluded that one excess carrier (USF&G) was "correct in asserting that a portion of the loss should have been prorated among the excess insurers" where there were conflicting excess "other insurance" clauses. 309 S.W.3d at 561. In discussing the reasons for the appeal by USF&G, the Court noted the trial court's take nothing judgment against USF&G because the claims were foreclosed by the *Mid-Continent* decision. 369 S.W.3d at 563-64. The Court exhaustively discusses the Texas Supreme Court's rulings in *Mid-Continent* precluding contribution where there are non-conflicting pro rata "other insurance" clauses and in *Hardware Dealers* requiring contribution where there are conflicting excess "other insurance" clauses.

24. The Court held that the *Mid-Continent* ruling did not negate USF&G's right to contribution because of the differing "other insurance" clauses, as the clauses in *Mid-Continent* "contained identical—and compatible—pro rata other-insurance clauses that limited each insurer's indemnity obligation," while the clauses in the three excess policies in question were such that the Court was "not presented with compatible pro rata other-insurance clauses, but with conflicting clauses, each of which purports to make the coverage afforded by the policy excess to any other coverage." 369 S.W.3d at 566. Given the conflicting excess "other insurance" clauses, the Court required contribution based on the ruling in *Hardware Dealers* "that when faced with conflicting other-insurance clauses, 'the only reasonable result to be reached is a proration between the two

insurance companies in proportion to the amount of insurance provided by their respective policies.'" 369 S.W.3d at 567 (quoting *Hardware Dealers*, 444 S.W.2d at 590).

25. Thus, the Court "agree[d] with USF&G that the other-insurance clauses of the [three carriers'] excess policies are mutually repugnant" and concluded that USF&G was entitled to recover the pro rata portion of its settlement payment. 369 S.W.3d at 569. For precisely the same reasons, Allstate is entitled to contribution for Federal's pro rata portion of its settlement payment because of the admittedly conflicting excess "other insurance" clauses in the Allstate and Federal policies.

For these reasons, Plaintiff Allstate Indemnity Company respectfully requests that the Court enter a declaratory judgment requiring Defendant Federal Insurance Company to reimburse Allstate for its $910,000 pro rata indemnity obligation and for such other and further relief as is proper, including pre-judgment interest.

Respectfully submitted,

*/s/ Ronald J. Restrepo*
Ronald J. Restrepo
State Bar No. 16791300
Federal I.D. No. 920
rrestrepo@drhrlaw.com
**DOYLE, RESTREPO, HARVIN & ROBBINS, LLP**
440 Louisiana, Suite 2300
Houston, Texas 77002
(713) 228-5100 Telephone
(713) 228-6138 Facsimile

**ATTORNEY-IN-CHARGE FOR PLAINTIFF, ALLSTATE INDEMNITY COMPANY**

## **CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the above and foregoing instrument has been served on all counsel of record by E-File on December 16, 2025.

              */s/ Ronald J. Restrepo*
              Ronald J. Restrepo