United States District Court
Southern District of Texas
**ENTERED**
February 19, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALLSTATE INDEMNITY COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-25-3693 |
| | § | |
| FEDERAL INSURANCE COMPANY, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This is a declaratory judgment action. Allstate Indemnity Company and Federal Insurance Company both insure Kendall Jordan. In the underlying lawsuit, Makenzy Cornell sued Jordan for substantial bodily injury that she suffered in a car crash with Jordan. Cornell demanded $1.25 million to settle the claims against Jordan. Defense counsel strongly recommended that the insurers pay the settlement. Allstate sent multiple letters to Federal to obtain its assent to the settlement and to a pro rata split of the $1 million in excess of the $250,000 primary auto policy limit. Federal never responded. With the settlement deadline imminent, Allstate, unable to coordinate with Federal, paid the $1.25 million for a full release of Cornell's claims. Allstate then sued Federal to recover the $910,000 pro rata share of the settlement agreement that it contends Federal should have paid.

Allstate has moved for summary judgment. (Docket Entry No. 10). Based on the pleadings, the motion, the record, and the applicable law, the court grants the motion and holds that Allstate is entitled to equitable contribution from Federal in the amount of $910,000.

I.     Background

This dispute arises out of the settlement of a vehicle collision lawsuit between Makenzy Cornell and Kendal Jordan in Montgomery County, Texas. (Docket Entry No. 10-2 at 1). Cornell sought damages for substantial bodily injury. Jordan had primary coverage under an Allstate Fire and Casualty Insurance Company auto policy, which had a bodily injury liability limit of $250,000. (Docket Entry No. 10 at 2; Docket Entry No. 13 at 1). Jordan also had a personal umbrella policy with a limit of $1 million. (Docket Entry No. 1 ¶ 3; Docket Entry No. 10-2 at 1). Federal's excess policy provided liability coverage for the claims against Jordan in the underlying lawsuit. (Docket Entry No. 7 ¶ 10).

Both policies have "excess clauses, which restrict the liability of an insurer to excess coverage after another insurer has paid up to its policy limits." *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 206 (5th Cir. 1996). The Federal policy has a $10 million limit and requires payment for damages "in excess of all underlying insurance covering those damages," including "all liability coverage that applies to the covered damages, except for other insurance purchased in excess of this policy." (Docket Entry No. 1 ¶ 13; Docket Entry No. 7 ¶ 13). The Allstate umbrella policy states that Allstate "will pay only that amount of damages which exceeds the sum of" the limits on the auto policy and "the limits of any and all other liability insurance available to an insured person which apply to this occurrence." (Docket Entry No. 1 ¶ 12; Docket Entry No. 7 ¶ 12).

On May 14, 2024, Cornell's counsel sent Jordan a $1.25 million settlement demand. The letter argued that the case presented "a clear liability incident" because Jordan "made an illegal and dangerous turn in front of" Cornell, "causing a high-speed collision" in which Cornell "suffered severe and life-altering injuries." (Docket Entry No. 10-2 at 1). Cornell's expert

estimated that Cornell's "damages far exceed the coverages in this matter of $250,000 provided by Allstate Policy Number 886 8883 589 and $1,000,000 Excess Liability provided by Allstate Policy Number 816 562 038." (*Id.*).

On June 18, 2024, counsel for Allstate sent Federal a letter expressing interest in accepting the settlement offer and demanding that Federal "agree to pay $910,000 of the $1.25 million as its pro rata share of the $1 million in excess of the AFCI policy limit." (Docket Entry No. 10-3 at 6). The letter stated that the parties could agree on the $1.25 million offer "despite total coverage of $11.25 million under the three policies." (*Id.* at 1). It also recounted that Jordan's defense counsel was "confident that the $1.25 million settlement would be eminently reasonable given the life care plan and other damages documentation and testimony that w[ould] be admitted into evidence that could result in a judgment against Mr. Jordan far in excess of $1.25 million demand." (*Id.*). The letter reiterated that Jordan's defense counsel "strongly recommend[ed] that the carriers pay the $1.25 million for a full release of his client." (*Id.*). The deadline to respond to Cornell's settlement demand was July 5, 2024. (*Id.*).

Federal did not respond. Allstate followed up with another letter on July 1, 2024. (Docket Entry No. 10-4). Federal did not respond to that letter either. With the deadline impending, Allstate paid the settlement. It then filed this lawsuit against Federal seeking a $910,000 payment for Federal's pro rata share of the settlement. (Docket Entry No. 1). Allstate has now moved for summary judgment. (Docket Entry No. 10).

## II.     The Legal Standard

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). An issue of fact is genuine if a reasonable trier of fact could

3

return judgment for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is material if it "might affect the outcome of the suit under the governing law" and is not "irrelevant or unnecessary." *Id.* The court must construe all the evidence and draw all reasonable inferences from the evidence in the light most favorable to the non-moving party. *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). If the non-moving party prevails as a matter of law after so construing the record, or if reasonable minds could differ on the import of the evidence presented, the court must deny the motion for summary judgment. *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020).

### III.  Analysis

In cases of "double or overlapping insurance," "[f]or an insurer to be entitled to equitable contribution from other insurers, the policies in question must insure the same party, the same interest, and the same risk." *Union Indem. Ins. Co. of New York v. Certain Underwriters at Lloyd's*, 614 F. Supp. 1015, 1016 (S.D. Tex. 1985). The right to contribution arises when "the several insurers share a common obligation or burden" and "the insurer seeking contribution has made a compulsory payment or other discharge of more than its fair share of the common obligation or burden." *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 772 (Tex. 2007) (citing *Employers Cas. Co. v. Trans. Ins. Co.*, 444 S.W.2d 606, 609 (Tex. 1969)). "If one insurer pays the insured's entire loss in such a situation, that insurer is entitled to pro rata contribution from any other insurer who issued double insurance." *Union Indem. Ins. Co.*, 614 F. Supp. at 1017–18.

Federal concedes that both it and Allstate insure "the same party, the same interest, and the same risk." Federal's answer admitted that Jordan was "Allstate's and Federal's mutual insured"; that "[a]fter deducting the $250,000 primary bodily injury liability limit of the underlying auto

policy, the balance payable by Allstate and Federal was $1 million"; and that "[t]he Allstate personal umbrella policy had a $1 million limit, while the Federal personal excess liability policy had a $10 million limit." (Docket Entry No. 1 ¶ 3; Docket Entry No. 7 ¶ 3). In this suit, Federal does not dispute that both the Allstate umbrella policy and the Federal policy provided excess coverage for the claims against Jordan. (Docket Entry No. 1 ¶ 11; Docket Entry No. 7 ¶ 11). Allstate's right to contribution is clear.

Federal argues that Allstate's contribution argument and remaining claims fail for three reasons: (1) *Mid-Continent* forecloses a contribution claim under these facts; (2) Allstate cannot show that it "involuntarily paid" the settlement, which is necessary for a contribution or subrogation claim, *Frymire Eng'g Co. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008); (Docket Entry No. 13 at 3); and (3) Federal "did not breach any *Stowers* duty" that could give right to a subrogation claim, (Docket Entry No. 13 at 2). None of Federal's arguments are persuasive.

*Mid-Continent* does not bar Allstate's claims. In *Mid-Continent*, the defendant in the underlying lawsuit was an insured covered under two comprehensive general liability policies. 236 S.W.3d at 769. The underlying defendant was a named insured under a policy issued by Liberty Mutual and an additional insured under its subcontractor's policy issued by Mid-Continent. Both policies provided the insured $1 million in coverage for the underlying suit. Neither insurer disputed that it owed a duty to defend and to indemnify. The only issue was the relative amount each would be required to pay in the settlement. *Id.* at 769–70.

The court concluded that there was no right to contribution because both insurers had "pro rata" clauses in their policies. *Id.* at 772. "The effect of the pro rata clause precludes a direct claim for contribution among insurers because the clause makes the contracts several and independent

5

of each other." *Id.* (citing *Traders & Gen. Ins. Co. v. Hicks Rubber Co.*, 169 S.W.2d 142, 147 (Tex. 1943)). "With independent contractual obligations, the co-insurers do not meet the common obligation requirement of a contribution claim—each co-insurer contractually agreed with the insured to pay only its pro rata share of a covered loss; the co-insurers did not contractually agree to pay each other's pro rata share." *Id.* (citing *Employers Cas. Co.*, 444 S.W.2d at 609). "In addition," the court stressed, "the co-insurer paying more than its contractually agreed upon proportionate share does so voluntarily; that is, without a legal obligation to do so." *Id.* (citing *Employers Cas. Co.*, 444 S.W.2d at 609–10). "Thus, a co-insurer paying more than its proportionate share cannot recover the excess from the other co-insurers." *Id.* (citing *Hicks Rubber*, 169 S.W.2d at 148). Because both insurers had "pro rata" clauses in their policies, under which they agreed to pay a proportionate share of the insured's loss up to $1 million, and they did not "contract with each other to create obligations between themselves or to pay each other's proportionate share of [the insured's] loss," there was no contribution claim. *Id.* at 773.

"Courts applying *Mid-Continent* have stressed that it is limited to its facts . . . ." *Emps. Ins. Co. of Wausau v. Penn-Am. Ins. Co.*, 705 F. Supp. 2d 696, 708 (S.D. Tex. 2010) (collecting cases); *see Colony Ins. Co. v. First Mercury Ins. Co.*, No. CV H-18-3429, 2020 WL 5658662, at *3 & n.10 (S.D. Tex. Sept. 22, 2020) ("The Fifth Circuit has made clear in a series of cases that the holding of *Mid-Continent* is limited to its facts."). "That is, there can be no recovery under a subrogation theory against a co-primary insurer only when neither insurer disputes coverage and the parties are subject to pro rata 'other insurance' clauses." *First Mercury*, 2020 WL 5658662, at *3. This limited rule "makes perfect sense." *Id.* at *4. Texas law prioritizes the interests of the insured. *Id.* at *3. When neither insurer denies coverage, the insured is "always protected." *Id.* at *4. If "insurers merely disagreed about the settlement value of the case," their "differing

6

business decisions about whether and how to settle the case would not give rise to any injury to the insured." *Id.* No "cause of action in subrogation by the over-paying insurer against the under-paying insurer" is needed. *Id.*

This case is different, for three reasons. First, Federal did not respond to the settlement demand. As a result, this is more like a case in which "coverage is disputed." *Id.* It was not clear that the insured was "fully protected"; the insured could have been "at the whim of dueling insurance carriers." *Id.* "If the rule of *Mid-Continent* applied in this situation, it would encourage insurers to" avoid responding to fair and reasonable settlements "in the hope that the other insurer pays." *Id.* Justice Willett's concurrence in *Mid-Continent* emphasized that the equities may differ when, as here, an insurer "sit[s] idly on the sidelines." *Mid-Continent*, 236 S.W.3d at 777 (Willett, J., concurring). Uninterested insurance companies could allow equitable settlement offers to expire, frustrating the goals of Texas insurance law.

Second, unlike in *Mid-Continent*, conflicting "other insurance" clauses bind both Allstate and Federal to pay the entire loss in excess of the primary auto limit. (Docket Entry No. 1 ¶ 13; Docket Entry No. 7 ¶ 13). "[W]hen conflicting 'other insurance' clauses are involved, contribution is available to an insurer that pays more than its proportionate share." *Evanston Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, No. 1:09-CV-909, 2012 WL 12977322, at *11 (E.D. Tex. Mar. 19, 2012); *see U.S. Auto. Ass'n v. Underwriters at Int.*, No. 14-98-00234-CV, 2000 WL 332718, at *2 (Tex. App.—Houston [14th Dist.] Mar. 30, 2000, no pet.) ("[W]here an insured has coverage from either of two policies but for the other, and each contains a provision which is reasonably construed to conflict with a provision of the other, the repugnancy is resolved by ignoring the conflicting provisions and prorating the coverage in proportion to the policy limits of each policy.").

Federal argues that there is a genuine factual dispute as to whether the contract's "other insurance" clauses are conflicting. But Federal's answer concedes that they conflict. (Docket Entry No. 1 ¶ 13; Docket Entry No. 7 ¶ 13; *see also id.* ¶ 24 ("The allegation of Paragraph 24. of the Complaint that Allstate and Federal have conflicting provisions in their policies is admitted.")). "A party who makes an admission, whether express or by default, is bound by that admission for summary judgment purposes." *See Caracci v. Westchester Surplus Lines Ins. Co.*, No. CV 23-2544, 2024 WL 1767593, at *2 (E.D. La. Apr. 24, 2024). "[N]ot even contrary evidence can overcome an admission at the summary judgment stage." *Id. Mid-Continent*'s limitations on contribution claims do not apply to the facts of this case.

Third, Allstate's payment was not voluntary. "Having determined that [Allstate] and [Federal] share a common obligation, as each of the policies covers the [Jordan] settlement, the only remaining consideration is whether [Allstate] made a compulsory payment of more than its fair share of that settlement." *Evanston Ins.*, 2012 WL 12977322, at *12. "In Texas, an insurer's payment toward settlement of a lawsuit is not voluntary if the insurer makes the payment 'in good faith and under a reasonable belief that the payment is necessary' for the insured's protection." *First Mercury*, No. CV H-18-3429, 2020 WL 5658662, at *4 (quoting *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 256 (5th Cir. 2011)); *see* 15A COUCH ON INSURANCE § 218:27 (Dec. 2025) ("[T]he settlement must be reasonable and entered into in good faith in order for the payor to maintain contribution rights."). For example, "an excess insurer's payment to settle a suit against the insured has been said to be presumptively involuntary for subrogation purposes." *Peachtree Constr.*, 647 F.3d at 256. This relaxed definition of "involuntary" is sensible because the insurance principles are designed "to encourage fair and reasonable settlement of lawsuits." *Am. Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 482 (Tex. 1992). If Federal could

8

avoid contribution liability by refusing to respond to a co-insurer who wants to reach a fair and reasonable settlement to a suit, then Allstate would have no incentive to pay a reasonable amount to settle the lawsuit expeditiously. Disputes between insurance companies could allow reasonable settlement offers to expire, again frustrating the goals of Texas insurance law.

Federal has not "presented evidence to overcome th[e] presumption" of involuntariness. *First Mercury*, 2020 WL 5658662, at *4. Federal "has neither shown the payment was made in bad faith nor that [Allstate] did not reasonably believe the payment was necessary for its protection." *Maryland Cas. Co. v. Acceptance Indem. Ins. Co.*, No. A-08-CA-697-SS, 2009 WL 10681020, at *5 (W.D. Tex. May 14, 2009). The record shows that Allstate based its decision to settle on Jordan's counsel's confidence "that the $1.25 million settlement would be eminently reasonable given the life care plan and other damages documentation and testimony that w[ould] be admitted into evidence that could result in a judgment against Mr. Jordan far in excess of $1.25 million demand." (Docket Entry No. 10-3 at 1). Jordan's defense counsel "strongly recommend[ed] that the carriers pay the $1.25 million for a full release of his client." (*Id.*). Federal offers no evidence on which a reasonable jury could find the settlement was voluntary.

Federal's reliance on *Mid-Continent*'s conclusion that the excess payment in that case was voluntary does not alter this conclusion. (Docket Entry No. 13 at 5–6). Because both insurance contracts in *Mid-Continent* had pro rata clauses, the contracts were "several and independent of each other." 236 S.W.3d at 772. "[E]ach co-insurer contractually agreed with the insured to pay only its pro rata share of a covered loss; the co-insurers did not contractually agree to pay each other's pro rata share." *Id.* By paying more than that "contractually agreed upon proportionate share," the co-insurer acted "voluntarily." *Id.* But there are conflicting "other insurance" clauses in this case. As a result, each co-insurer's liability is not "confined to only a proportion of the

loss." *See Evanston Ins.*, 2012 WL 12977322, at *11. There is a "common obligation" to cover the Jordan "settlement." *Id.* at *13. Payment is not voluntary because Allstate made it in service of an obligation; Allstate did not settle for more than its legal obligation, unlike the co-insurer in *Mid-Continent* did. *Compare Frymire Eng'g*, 259 S.W.3d at 146 ("Having acted to satisfy a legal obligation and to protect its interests under the contract (and its reputation in the marketplace), Frymire involuntarily extinguished a debt primarily owed by Jomar to the hotel owner."), *with Mid-Continent*, 236 S.W.3d at 772 (holding that a co-insurer that pays "*more than* its contractually agreed upon proportionate share does so voluntarily" (emphasis added)).

Federal's final argument that it did not breach its *Stowers* duty does not preclude granting summary judgment for Allstate. *Stowers* imposes a duty on insurers to protect the insured by accepting a reasonable settlement offer within policy limits. *G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App.1929, holding approved). In *Mid-Continent*, the Texas Supreme Court addressed *Stowers* because Liberty Mutual argued that it was "subrogated to the common law right of Kinsel to enforce Mid-Continent's duty to act reasonably when handling an insured's defense." 236 S.W.3d at 776. The court declined "to modify *Stowers* to create rights for Kinsel and therefore, Liberty Mutual, via subrogation." *Id.* In this case, Allstate is not attempting to enforce Jordan's *Stowers* right via subrogation. Allstate is seeking to enforce its own right to contribution because both Allstate and Federal "insure the same party, the same interest, and the same risk." *Union Indem.*, 614 F. Supp. at 1016. Whether the settlement demands in this case triggered the *Stowers* duty is not relevant. The relevant question is whether Allstate made "the payment 'in good faith and under a reasonable belief that the payment [was] necessary' for the insured's protection." *First Mercury*, 2020 WL 5658662, at *4 (quoting *Peachtree Constr., Ltd.*, 647 F.3d at 256). Federal does not dispute the record evidence on that issue.

Even if *Stowers* was relevant, it does not preclude Allstate's contribution claim. "The *Stowers* duty is not activated by a settlement demand unless three prerequisites are met: (1) the claim against the insured is within the scope of coverage, (2) the demand is within the policy limits, and (3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment." *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 849 (Tex. 1994) (citing *Stowers*, 15 S.W.2d at 547). Federal argues that there "is no *Stowers* breach here because the demand exceeded the applicable primary limits." (Docket Entry No. 13 at 7). Federal's argument fails because Allstate, by informing Federal of the settlement and proffering the primary insurance policy's limits, triggered the excess insurers' *Stowers* duties.

The Texas Supreme Court has explained that "[a]n excess insurer owes its insured a duty to accept reasonable settlements" when "the primary insurer has tendered its policy limits." *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 701 (Tex. 2000). Allstate's letters to Federal tendered its policy limits. (*See* Docket Entry No. 10-3 at 2 ("AIC demands that Federal agree to pay $910,000 as its pro rata share of the $1 million settlement in excess of the AFCI limit of $250,000."); *id.* at 6 ("For these same reasons, AIC and Federal provide pro rata, not excess, coverage above the AFCI policy limit of $250,000.")). Because Allstate tendered its policy limit to Federal and because the settlement offer in the underlying lawsuit equaled Allstate's policy limit and was within Federal's policy limit, both Allstate's and Federal's "*Stowers* duties came into play." *Pride Transp. v. Cont'l Cas. Co.*, 804 F. Supp. 2d 520, 530 (N.D. Tex. 2011) ("Continental tendered its policy limits to Lexington just prior to the expiration of the Hatleys' demand. At that point, with combined policy proceeds equaling the amount of the

11

Hatleys' demand, Lexington's *Stowers* duties came into play." (footnote omitted)), *aff'd*, 511 F. App'x 347 (5th Cir. 2013).

For these reasons, the undisputed facts entitle Allstate to summary judgment on its contribution claim. Allstate and Federal had a common obligation to insure Jordan against the claims that Cornell brought against him, and Allstate made a fair and reasonable settlement payment to Cornell in service of its legal obligations to Jordan. Because Allstate paid more than its fair share of its legal obligation to settle Jordan's claims, it has a right to pro rata contribution from Federal.

### IV. Conclusion

Allstate's motion for summary judgment, (Docket Entry No. 10), is granted. It is entitled to summary judgment as a matter of law on its equitable contribution claim. (*See* Docket Entry No. 1 ¶¶ 29–31). Federal does not dispute Allstate's proposed pro rata split of the excess $1 million paid: $910,000 by Federal, and $90,000 by Allstate. Allstate must file by March 4, 2026, a proposed final judgment that sets forth the prejudgment interest and costs, if any, to which it is entitled.

SIGNED on February 19, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge